RECEIVED
OCT 1 0 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| BRODIE SIMON | CIVIL ACTION NO. 07-0427 |
| VERSUS | JUDGE DOHERTY |
| INTERNATIONAL MARINE, LLC | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Pending before this Court are two motions for summary judgment: (1) Motion for Summary Judgment [Doc. 60] filed by third-party defendant Dynamic Industries, Inc. ("Dynamic"); and (2) Cross-Motion for Summary Judgment [Doc. 69] filed by defendant and third-party plaintiff Alliance Offshore, L.L.C. ("Alliance"). Defendants and third-party plaintiffs International Marine, Inc. ("IM") and Alliance filed a response to Dynamic's motion [Doc. 69],[1] and Dynamic filed a reply brief [Doc. 82]. Additionally, Dynamic filed a response to Alliance's motion for summary judgment [Doc. 79]. Finally, Apache Corporation filed a response to Dynamic's motion for summary judgment, wherein Apache adopts by reference the opposition brief of IM and Alliance to Dynamic's motion for summary judgment [Doc. 72].

Dynamic seeks summary judgment "regarding the third party demand of International Marine, L.L.C. ("IM")," declaring there is no genuine issue of material fact that at the time of the alleged incident, Dynamic did not owe contractual defense and indemnity to IM or Alliance, because Dynamic contracted with International Boat Rentals, Inc. ("IBR"), and neither IM nor Alliance are "affiliates" of IBR such that the indemnification and defense provisions of the contract would flow

---

[1] The cross-motion for summary judgment filed by Alliance is actually contained within the response brief filed by IM and Alliance to Dynamic's motion for summary judgment.

to IM or Alliance. In its cross-motion for summary judgment, Alliance contends it *is* an "affiliate" of IBR, such that it is owed contractual defense and indemnity from Dynamic on the plaintiff's main demand. In its cross-motion for summary judgment, Alliance states it is

> clearly an affiliate of International Boat Rentals and is therefore entitled to defense and indemnity from Dynamic in accord with the provisions of the Agreement. Therefore, as a matter of fact and law, Dynamic Industries' Motion for Summary Judgment should be DENIED and Alliance Offspore's Cross Motion for Summary Judgment should be GRANTED.

For the following reason, Dynamic's motion for summary judgment is GRANTED, and Alliance's motion for summary judgment is DENIED.

I. **Factual and Procedural History**

The instant litigation involves a lawsuit for personal injuries allegedly sustained by plaintiff onboard the M/V INTERNATIONAL TITAN on December 7, 2005. Plaintiff alleges that, at the time of his accident, he was working as an electrician for Dynamic. On the date of his accident, plaintiff alleges he was a passenger onboard the vessel, which was en route to a fixed platform where plaintiff was going to perform electrical work. Plaintiff was lying in the top bunk of a set of bunks beds located on the vessel. Plaintiff alleges the seas were very rough on the day of his accident. Plaintiff alleges that as the vessel approached the platform, he was alerted to wake up and prepare to disembark, but that before he could safely climb down from the bunk, he was thrown from the bunk bed onto the floor. The floor contained a large bolt or contrivance protruding upward several inches from the floor. Plaintiff alleges he landed with his low back striking the bolt, causing him to sustain severe and permanently disabling injuries.[2]

Initially, plaintiff sued only IM, alleging the following:

---

[2] *See* plaintiff's Complaint, Doc. 1, ¶¶4-6.

This action arises under the General Maritime Laws of the United States and/or pursuant to Rule 905(b) of the Longshore and Harbor Workers Compensation Act ("LHWCA") since the accident occurred upon navigable waters, over the Outer Continental Shelf in the Gulf of Mexico, off the coast of Louisiana on board the vessel M/V International Titan, believed to be owned and operated by defendant, International Marine, L.L.C."[3]

Despite the lack of clarity in plaintiff's original complaint, it appears plaintiff is suing the owner of the vessel under the general maritime law. With respect to the May 12, 2005 Reciprocal Hold Harmless Agreement at issue in this litigation, IM and Alliance state: "Clearly this is a maritime contract, which Dynamic does not dispute."[4] Dynamic does not, in fact, dispute that the hold harmless agreement is a maritime contract, therefore this Court will accept that the May 12, 2005 Reciprocal Hold Harmless Agreement at issue in this litigation is a maritime contract for vessel services.

At the time plaintiff filed his original complaint, plaintiff believed IM to be the owner of the vessel at the time of his accident. IM subsequently filed an answer and third-party complaint against Dynamic Industries, Inc. ("Dynamic") on April 30, 2007, alleging Dynamic owes contractual defense and indemnity to IM in connection with the plaintiff's main demand [Doc. 3]. Dynamic answered the third-party complaint denying it owes defense and indemnity or any other obligations to IM under any contract or agreement applicable to the plaintiff's alleged accident.

Although IM admitted in its Answer that it "owned and operated the M/V Int'l Titan at the time of the alleged incident," in subsequent discovery, it was established that *Alliance* had, in fact, owned the vessel at the time of plaintiff's alleged injury, and that the transfer of vessel ownership

---

[3] *Id.* at ¶1.

[4] See Doc. 69-2, at pg. 4.

from Alliance to IM did not include an acceptance of Alliance's liabilities. Therefore, the parties do not dispute that, notwithstanding the naming of IM as a party defendant in this matter, Alliance was the owner of the vessel in question at the time of the plaintiff's alleged injury, and therefore, is the owner of the vessel at the relevant time period for purposes of this motion.[5]

The following facts are contained within the Statements of Material Facts submitted by the parties and are not disputed:

- International Boat Rentals, Inc. was incorporated in February 1996. Stephen Williams is listed as the incorporator and director; and Stephen Williams and his wife Rhonda Chaisson Williams are registered agents for service of process and owners of International Boat Rentals, Inc.

- Stephen Williams is the sole member/owner of Alliance Offshore, LLC.

- Alliance Offshore, LLC did not own any part of International Boat Rentals, Inc., at the time of the accident sued upon.

- International Boat Rentals, Inc. did not own any part of Alliance Offshore, LLC, at the time of the accident sued upon.

- Alliance Offshore, LLC was not owned by a parent company at the time of the accident made subject to this litigation.

- International Boat Rentals, Inc. was not owned by a parent company at the time of the accident made subject to this litigation.

- At the time of the plaintiff's alleged injury, Stephen Williams's companies owned approximately fifty (50) vessels.

- At the time of the accident, International Boat Rentals, Inc., International Marine, LLC, and Alliance Offshore, LLC were separate and distinct companies from a corporate, liability, and financial standpoint.

---

[5] At the time Dynamic filed its motion for summary judgment, Alliance was not yet a party defendant and had not yet filed its third-party demand against Dynamic. However, anticipating that Alliance would be added and would file a third-party demand against Dynamic and noting the dispositive motion deadline was approaching, Dynamic stated in its motion for summary judgment that it seeks summary judgment on the third-party claims of both IM and Alliance.

- International Boat Rentals, Inc., International Marine, LLC, and Alliance Offshore, LLC are each liable for their own debts and responsible for their own liabilities.

- At the time of the plaintiff's alleged injury, all of the vessels and companies at issue in this litigation were jointly operated by approximately thirty (30) administrative personnel working at Stephen Williams's headquarters located at 11864 Highway 308 in Larose, Louisiana.

- All of the vessels owned by Stephen Williams were brokered through IBR.

- At the time of the plaintiff's injury, the M/V International Titan was under charter to Apache Corporation via an agreement between Apache and IBR.

- A document entitled "Reciprocal Hold Harmless" Agreement was entered into by and between IBR and Dynamic on May 12, 2005. The Agreement provides as follows:

> This agreement ("the Agreement") *is entered into by International Boat Rentals, Inc., hereinafter referred to as "Owner" and Dynamic Industries, hereinafter referred to as "Contractor"* on the 12th day of May, 2005. The purpose of the Agreement is to provide Contractor access to vessels owned, chartered and/or operated by Owner, its subsidiaries and affiliates (the "Vessels") and further, to provide employees of Contractor with transportation, working, living or operating support aboard the Vessels and to allocate the risks and liabilities arising out of Owner Group granting to Contractor access to and services aboard the Vessels.
>
> [ ... ]
>
> I(e). *<u>"Owner Group" means International Boat Rentals, Inc., all of its parents, subsidiaries, affiliates</u>*, and their respective invitees, contractors and/or subcontractors, at any tier (except for Contractor Group), and all of their directors, officers, insurers, underwriters and the Vessels; and
>
> [ ... ]
>
> II(B). <u>Contractor Indemnities</u>. Contractor agrees to indemnify owner group against any and all claims for illness, injury and/or death, property damage, loss of equipment, or otherwise that may be asserted by contractor group, or any of contractor group employees, resulting from, arising out of, or in any way connected with or incident to,

directly or indirectly, the services; and whether or not any claim shall arise, in whole or in part, or be caused by the sole, joint or concurrent negligence or other fault of any party, including owner group, or by any legal theory, including but not limited to strict liability, assigned to owner group. Contractor further agrees to indemnify owner group against any and all claims by contractor group's customer for contractual indemnity obligations arising out of or related to any and all claims described in the preceding sentence of this section II.B. Contractor's obligation to indemnify owner group shall extend to any reasonable attorney fees and legal expenses relating to the claim, and includes any reasonable attorney fees or legal expenses related to successfully enforcing the provisions of the agreement. It is agreed to by the parties that in the event the contractor is free from fault regarding the incident which obligates the contractor to indemnify the owner as described above, the contractor's obligation to indemnify the owner shall be limited to contractor's policy limits of its insurance coverage as required in Exhibit "A" of this agreement.[6]

(emphasis added).

## II. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. Proc. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must

---

[6] *See* "Reciprocal Hold Harmless" Agreement, ¶¶ I(e) and II(B), attached as Exhibit "A" to Dynamic's Motion for Summary Judgment, Doc. 60.

set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R. Civ. Proc. 56(e).

As the Fifth Circuit has pointed out:

This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.* ...[S]ummary judgment is appropriate in *any* case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations omitted)(emphasis in original).

In evaluating the evidence provided in support of, and in opposition to a Motion for Summary Judgment, "[t]he court must view facts and inferences in the light most favorable to the party opposing the motion." Hunt v. Rapides Healthcare Sys. LLC, 277 F.3d 757, 762 (5th Cir. 2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the non-moving party." Id. In evaluating evidence to determine whether a factual dispute exists, "[c]redibility determinations are not part of the summary judgment analysis." Id. To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party *that the jury is not required to believe*, and should give credence to the evidence favoring the non-moving party, *as well as that evidence supporting the moving party that is uncontradicted and unimpeached.*" Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001) (emphases added).

### III. Analysis

#### A. Dynamic's Motion for Summary Judgment [Doc. 60]

Dynamic seeks summary judgment on the third-party claims of both IM and Alliance on grounds there is no genuine issue of material fact that at the time of the alleged incident, Dynamic did not owe contractual defense and indemnity to IM or Alliance, as Dynamic contracted with IBR, and neither IM nor Alliance are "affiliates" of IBR such that the indemnification and defense provisions of the contract would flow to IM or Alliance, all as more specifically set forth below.

Dynamic and IBR entered into a contract containing a Reciprocal Hold Harmless Agreement on May 12, 2005. There is no dispute the agreement was in effect at the time of plaintiff's accident. All parties agree the contract, i.e., the reciprocal Hold Harmless Agreement of May 12, 2005, is a **maritime contract** and that its indemnity provisions are valid and enforceable under maritime law. The indemnity language contained in the agreement states as follows:

> I(e). *"**Owner Group" means International Boat Rentals, Inc., all of its parents, subsidiaries, affiliates**,* and their respective invitees, contractors and/or subcontractors, at any tier (except for Contractor Group), and all of their directors, officers, insurers, underwriters and the Vessels; and
>
> [. . .]
>
> II(b). <u>Contractor Indemnities</u>. Contractor agrees to indemnify owner group against any and all claims for illness, injury and/or death, property damage, loss of equipment, or otherwise that may be asserted by contractor group, or any of contractor group employees, resulting from, arising out of, or in any way connected with or incident to, directly or indirectly, the services; and whether or not any claim shall arise, in whole or in part, or be caused by the sole, joint or concurrent negligence or other fault of any party, including owner group, or by any legal theory, including but not limited to strict liability, assigned to owner group. Contractor further agrees to indemnify owner group against any and all claims by contractor group's customer for contractual indemnity obligations arising out of or related to any and all claims described in the preceding sentence of this section II.B. Contractor's obligation to indemnify owner group shall extend to any reasonable attorney fees and legal expenses relating to the claim, and includes any reasonable attorney fees or legal expenses related to successfully enforcing the provisions of the agreement. It is agreed to by the parties that in the event the contractor is free from fault

> regarding the incident which obligates the contractor to indemnify the owner
> as described above, the contractor's obligation to indemnify the owner shall
> be limited to contractor's policy limits of its insurance coverage as required
> in Exhibit "A" of this agreement.

In the instant motion, Dynamic moves for summary judgment, contending it contracted with *IBR*, and that because *neither* IM nor Alliance were "parents, subsidiaries, or affiliates" of IBR at the time of the plaintiff's injury, the defense and indemnity provisions of the hold harmless agreement do not inure to the benefit of either IM or Alliance, and, therefore, Dynamic is not obligated to provide a defense or indemnification to either of those entities in connection with the plaintiff's main demand. In response, IM and Alliance contend they are, indeed, affiliates of IBR, arguing all three companies are owned by the same individual, Stephen Williams, and all of the companies shared approximately thirty administrative personnel working at Stephen William's Larose, Louisiana home office at the time of the plaintiff's alleged injury. Thus, because they are affiliates of IBR, IM and Alliance argue they are entitled to defense and indemnity from Dynamic on the plaintiff's main demand against IM and Alliance pursuant to the hold harmless agreement executed by Dynamic and IBR. Consequently, the crux of this matter is whether IM and Alliance are "affiliates" of IM under the May 12, 2005 contractual agreement, and the briefs of the parties focus on that discreet, legal issue.

As an initial matter, this Court notes the usual rules of contractual interpretation determine the availability of indemnity under indemnity agreements. First, all parties agree the contract at issue is a maritime contract. Second, the construction of a maritime contract is governed by maritime law. *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir. 1986), *citing Lirette v. Popich Bros. Water Transport, Inc.*, 699 F.2d 725, 728 n. 11 (5th Cir.1983); *Transcontinental Gas Pipe Line Corp. v.*

*Mobile Drilling Barge*, 424 F.2d 684, 691 (5th Cir.), *cert. denied*, 400 U.S. 832, 91 S.Ct. 65, 27 L.Ed.2d 64 (1970). Under federal maritime law, "[a] contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986).

"A maritime contract containing an indemnity agreement ... should be read as a whole and its words given their plain meaning unless the provision is ambiguous." *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 834 (5th Cir. 1992), *citing Weathersby v. Conoco Oil Co.*, 752 F.2d 953, 955 (5th Cir.1984). *See also Fontenot*, 791 F.2d at 1214 (court should not look beyond the written language of the contract to determine the intent of the parties unless the disputed language is ambiguous); *Lirette v. Popich Bros. Water Transp., Inc.*, 699 F.2d 725, 728 n. 11 (5th Cir.1983). An indemnity clause will not afford protection unless its terms are expressed unequivocally. *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th 1981). Interpretation of the terms of a contract is a matter of law, reviewable *de novo* on appeal. *Foreman v. Exxon Corp.*, 770 F.2d 490, 496 (5th Cir. 1985), *citing Kemp*, 745 F.2d at 924; *see also City of Austin v. Decker Coal Co.*, 701 F.2d 420, 425 (5th Cir.1983), *cert. denied*, 464 U.S. 938, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *Matador Drilling Co. v. Post*, 662 F.2d 1190, 1195 (5th Cir.1981).

In the instant case, neither the May 12, 2005 contract in its entirety nor the specific hold harmless provision itself – all of which was drafted by counsel for Mr. Williams – defines the term "affiliate." Therefore, pursuant to the rules of general contract interpretation, this Court must give

the term "affiliate" its plain meaning unless the provision in which the term "affiliate" appears is ambiguous. This Court concludes the phrase "'Owner Group' means *International Boat Rentals, Inc., all of its parents, subsidiaries, affiliates....*" is not ambiguous such that the word "affiliate" cannot be given its plain meaning.

Dynamic relies, in part, upon a definition of "affiliate" as contained in Black's Law Dictionary, Sixth Edition, which states as follows:

> Affiliate/efiliyeyt/. Signifies the condition of being *united*; being in close connection, allied, associated or attached as a member or branch.
>
> *Affiliate company*. Company effectively *controlled by another* company. A branch, division, or subsidiary. Under Investment Company Act (15 U.S.C.A. § 80a-2), company in which there is ownership (direct or indirect) of 5 percent or more of the voting stock.
>
> Corporations which are related as parent and subsidiary, characterized by identity of ownership of capital stock.

Black's Law Dictionary 37 (6th ed. 1991) (emphasis in Dynamic's brief).

In response, however, IM and Alliance cite to the more current Eighth Edition of Black's Law Dictionary, which defines "affiliate" as follows:

> **affiliate** (<<schwa>>-fil-ee-it), n. **1.** A corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation. [Cases: Corporations 1.5. C.J.S. Corporations § 15.] **2.** Securities. One who controls, is controlled by, or is under common control with an issuer of a security. SEC Rule 10b-18(a)(1). . .

Black's Law Dictionary 63 (8th ed. 2004).

Neither party cites to a Fifth Circuit case defining the term, however, Dynamic cites *LMB, Inc. v. Lard Oil Co., Inc.*, 1998 WL 777825, 3 (E.D. La. 1998) in support of its position. In that case, the district court considered the definition of "affiliate" under a Louisiana statute that did not define the term and noted:

-11-

> . . . However, *that term's traditional meaning connotes a degree of control by the principal or lack of independence on the affiliate's part which appear lacking in this case.* Here it is undisputed that Lard *was a separate entity*, and the Court finds that LMB has not alleged a *relationship among the defendants sufficient* to cast Lard in the role of an affiliate.

1998 WL 777825, 3 (emphasis added). Thus, the Eastern District court, which considered the accepted and common usage of the term "affiliate," defined "affiliate" in terms of the *control* one entity exerts upon or over another.[7]

IM and Alliance cite two cases in support of their broader interpretation of the term "affiliate" – *Hopkins v. Howard*, 930 So.2d 999, 1004 (La. App. 4th Cir. 2006) and *Adams v. Dell Computer Corp.*, 2006 WL 2670969, 5 (S.D.Tex. 2006).[8] In *Hopkins*, the issue was whether, under a 1999 version of a Louisiana statute, the undefined term "affiliate" included a parent company. 930 So. 2d at 1004. The court held that it did, observing "we find the term affiliate was intended to have a broad meaning, which includes a parent company." *Hopkins*, 930 So.2d at 1008. However, the facts of *Hopkins* are distinguishable from the facts of the instant case, as IM and Alliance do not argue that IBR is *the parent company* of either IM or Alliance, or vice versa.

Similarly, in *Adams*, the court stated:

> "Affiliate" is not defined in the Dell Agreement, accordingly "its ordinary meaning must be used." *Eckland Consultants, Inc. v. Ryder, Stillwell Inc.*, 176 S.W.3d 80, 88 (Tex.App.-Houston [1st Dist.] 2004). Affiliate "is generally defined as a corporation *that is related to another corporation by shareholdings or other means of control ...* and as a company *effectively controlled by another or associated with others under common ownership or control.*" *See id.* (internal citations omitted).

2006 WL 2670969 at *5 (emphasis added).

---

[7] This Court notes it is not bound by the foregoing district court case, but cites it as illustrative only.

[8] Again, this Court is not bound by either a district court opinion or a Louisiana state court opinion in a case in which federal maritime law applies. However, to the extent these cases are instructive as to the "plain meaning" of the term "affiliate," the Court notes them for this reason only.

In *Adams*, the court held that a company that was "*indirectly owned, in part, by Dell, Inc.*"[9] was an affiliate of Dell. 2006 WL 2670969 at *6 (emphasis added). However, in the instant case, IBR *does not own either IM or Alliance, or vice versa*. One does not control the other. Rather, at best, they are companies who share certain administrative functions and are owned, separately, by the same person. Therefore, the *Adams* case is distinguishable from the case at issue.[10]

---

[9] In *Adams*, the court stated:

> The Dell Defendants classify DFS as an affiliate of Dell, since DFS is "indirectly owned, in part, by Dell Inc." (Dell Motion, ¶ 13). Plaintiffs' Petition describes DFS as "a joint venture between Dell and CIT" and states that "Dell is a 70% owner of DFS." (Petition, p. 6, ¶ 3). Accordingly, the Court finds that DFS can be characterized as a Dell affiliate, and therefore DFS is covered by the arbitration provision in the Dell Agreement.

Adams, 2006 WL 2670969 at *6.

[10] This Court also notes that a third case cited by IM and Alliance – *McCall v. Cameron Offshore Boats, Inc.*, 635 La. App. 3rd Cir. 1994) – does not actually stand for the proposition for which it is cited. IM and Alliance state in their opposition brief that in *McCall*,

> . . . the Louisiana Third Circuit Court of Appeals held that the usual definition of affiliate is 'a company effectively controlled by another or associated with others under common ownership or control' as defined by Webster's New Collegiate Dictionary.

However, a careful reading of the *McCall* case shows that the Third Circuit did not hold as such. Rather, in discussing the foregoing definition of "affiliate" in the case, the Third Circuit was actually quoting the *district court* in its reasons for judgment. The issue in *McCall* was whether a compromise agreement between a former wife and her husband releasing the former wife's claims against her husband and his "predecessors, *affiliates*, insurers" in connection with a divorce proceeding included the release of the husband's wholly owned corporation – of which he was president – in connection with the former wife's tort claim against the corporation, when the corporation was not a party to the compromise agreement.

Although the district court relied upon the foregoing definition of affiliate in expanding the compromise agreement to include the corporation – an unnamed party to the compromise – the Third Circuit reversed, holding that the corporation had "a separate and distinct identity apart from the individuals who compose[d] it." The Third Circuit held that the compromise was not binding on the corporation, in part, because the corporation was not a party to the agreement.

This Court notes the distinction for the benefit of counsel for IM and Alliance. Although the definition of "affiliate" as stated by the *district* court in *McCall* appears consistent with other sources' definition of the word, the case itself appears to support Dynamic's position in this case, as the Third Circuit found the corporation, which was not a party to the compromise agreement, was not bound by the agreement. Similarly, in this case, this Court finds that IM and Alliance, which are not parties to the May 12, 2005 Reciprocal Hold Harmless Agreement, are not

Here, the only evidence offered by IM and Alliance in support of their argument that they are affiliates of IBR is the fact that, at the time of plaintiff's alleged injury, certain companies and vessels owned by Stephen Williams shared approximately 30 administrative personnel working at Stephen Williams's Larose home office, and vessels owned by those separate companies shared the same broker, IBR. Specifically, neither IM nor Alliance offer any evidence of *shared ownership* [*one company by the other*] or *control [by one company over the other]*. Similarly, neither IM nor Alliance argue that any of the companies owned capital stock in any of the other companies, such that it is evident that one of the companies controlled the other financially. Indeed, IM and Alliance concede that

> *[for] corporate limitation of liability purposes, Mr. Williams operated all of the companies mentioned above **as separate entitles with separate bank accounts.*** However, Mr. Williams and the employees in the Larose headquarters handled all of the administrative duties for all of the Williams' operated companies.

*See* Alliance's Motion for Summary Judgment, Doc. 69, p. 3 (emphasis added).

It is undisputed that, at the time of the plaintiff's alleged injury, Alliance did not own any part of IBR; IBR did not own any part of Alliance; the companies, "documentation-wise," "tax-wise," and "financially," are admitted to be separate entities, with each of the companies liable for its own debts and liabilities; and there was no parent company at the time of the accident that owned Alliance or IBR, nor was IBR or Alliance the parent company of the other. Alliance, IM and IBR admit they were "operated . . . as separate entities." The fact that there was common ownership of Alliance, IM, and IBR – in the face of evidence that the companies were *completely separate* from a tax, financial, and corporate liability standpoint -- is insufficient to establish "affiliate" status.

---

bound by that agreement.

Indeed, to accept IM and Alliance's argument, it would seem IM and Alliance would come precariously close to arguing to pierce their own corporate veil, an argument this Court will assume neither IM nor Alliance is suggesting. Consequently, this Court concludes the evidence submitted by IM and Alliance is insufficient to establish the requisite control that this Court agrees is necessary to a finding of affiliate status.

Considering the foregoing, this Court finds IBR and IM were not "affiliated companies" as contemplated under the May 12, 2005 Reciprocal Hold Harmless Agreement at the time of the plaintiff's alleged accident, nor were IBR and Alliance "affiliated companies" under the law and the evidence as set forth above.

Pursuant to the hold harmless agreement at issue, Dynamic is expressly obligated to defend and indemnify *IBR* and its *"parents, subsidiaries, and affiliates."* As IM and Alliance are not "parents," "subsidiaries," or "affiliates" of IBR, Dynamic is not obligated to defend and indemnify IM or Alliance in connection with the plaintiff's main demand. Therefore, with respect to the motion for summary judgment filed by Dynamic, considering the evidence and applicable law, this Court concludes there are no genuine issues of material fact showing IM and Alliance are owed defense and indemnity from Dynamic pursuant to the hold harmless agreement. Thus, Dynamic's motion for summary judgment requesting this Court dismiss the third-party complaints filed by IM and Alliance against Dynamic is GRANTED, and the third-party complaints filed by IM and Alliance against Dynamic for defense and indemnity are DISMISSED WITH PREJUDICE.

### B.   Alliance's Cross Motion for Summary Judgment [Doc. 69]

In its cross motion for summary judgment, Alliance seeks judgment on its third-party demand against Dynamic, requesting, presumably, that this court declare that Alliance is owed defense and

indemnity from Dynamic "in accord with the provisions of the Agreement." For the reasons stated herein, however, this Court concludes there are no genuine issues of material fact regarding whether IM and Alliance are "affiliates" of IBR, and, indeed, this Court has concluded IM and Alliance are not affiliates of IBR. As such, this Court has concluded Dynamic does not owe defense and indemnity to either IM or Alliance and has granted summary judgment in Dynamic's favor on this issue. Therefore, with respect to the motion for summary judgment filed by Alliance, this Court concludes Dynamic has carried its burden to meet Alliance's motion for summary judgment by demonstrating by competent evidence that there are no genuine issues of material fact showing IM and Alliance are owed a defense and indemnity from Dynamic pursuant to the hold harmless agreement. Consequently, Alliance's cross-motion for summary judgment is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 10 day of October, 2008.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE