RECEIVED
FEB - 6 2009
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| BRODIE SIMON | CIVIL ACTION NO. 07-0427 |
| VERSUS | JUDGE DOHERTY |
| INTERNATIONAL MARINE, LLC | MAGISTRATE JUDGE METHVIN |

## MEMORANDUM RULING

Pending before this Court are two cross motions for summary judgment: (1) Motion for Summary Judgment [Doc. 94] filed by defendant Apache Corporation ("Apache"); and (2) Motion for Summary Judgment [Doc. 99] filed by third-party defendant Dynamic Industries, Inc. ("Dynamic"). Each party has opposed the other party's motion [Docs. 98 & 101].

Apache "moves this Court for summary judgment regarding its counterclaim against Dynamic . . . stating that Dynamic owes defense and indemnity to Apache and its subcontractor Alliance Offshore, L.LC." pursuant to a Master Service Contract executed by the parties on August 8, 1996. Apache's argument that defense and indemnity is owed is two-fold: (1) the OSCLA "situs" requirement cannot be met, therefore, state law cannot apply to invalidate the defense and indemnity provision of the contract; and (2) the contract is a mixed or maritime contract, and therefore, federal maritime law applies, giving full force and effect to the defense and indemnity provision of the contract. In opposition, Dynamic contends Apache fails to distinguish the law applicable to the instant contractual controversy from the determination of the law applicable to the plaintiff's underlying tort claim, and further argues the contract at issue is a non-maritime contract. Therefore, Dynamic argues the contract is governed by Louisiana law, and the Louisiana Oilfield Anti-

Indemnity Act ("LOIA") bars the defense and indemnity provision at issue.

For the following reason, Dynamic's motion for summary judgment is GRANTED, and Apache's motion for summary judgment is DENIED.

## I. Factual and Procedural History

The instant litigation involves a lawsuit for personal injuries allegedly sustained by plaintiff onboard the M/V INTERNATIONAL TITAN on December 7, 2005. Plaintiff alleges that, at the time of his accident, he was being transported by vessel to a platform where he was working as an electrician for Dynamic; Apache hired Dynamic to provide workers for a job on its South Marsh Island 58A Platform ("the platform"). During December 2005, Apache chartered the M/V INTERNATIONAL TITAN to transport equipment and personnel to the platform, including transportation of Dynamic's employees, which included plaintiff.

On the date of his accident, plaintiff boarded the vessel at a dock facility for transport to the platform, where he was assigned to repair electrical work damaged as a result of Hurricane Rita. The repair work included repair to the platform's emergency shut-down safety system, installation of lights, work on wiring and re-wiring for various oilfield equipment on the platform, the running of cables for fire and gas safety alert systems and shut-in communication, and motor control. It is undisputed that, prior to arriving at the platform and while traveling over the water on open seas, plaintiff was allegedly injured when he was thrown from his bunk bed onto the floor of his living quarters.[1]

---

[1] Plaintiff alleges he was lying in the top bunk of a set of bunks beds located on the vessel. Plaintiff alleges the seas were very rough on the day of his accident. Plaintiff alleges that as the vessel approached the platform, he was alerted to wake up and prepare to disembark, but that before he could safely climb down from the bunk, he was thrown from the bunk bed onto the floor. The floor contained a large bolt or contrivance protruding upward several inches from the floor. Plaintiff alleges he landed with his low back striking the bolt, causing him to sustain severe and permanently disabling injuries. *See* plaintiff's Complaint, Doc. 1, ¶¶4-6.

Plaintiff initially filed suit against IM only, apparently under the general maritime law, for vessel negligence.[2] Defendants Dynamic and Alliance Offshore L.L.C., both subcontractors of Apache, were added by way of two subsequent amended complaints.[3] Apache was brought in via a third-party demand filed by IM, in which IM alleges Apache time-chartered the vessel to transport equipment and personnel to the platform, including the Dynamic employees.[4] [Doc. 36].

Once they were named as parties to the lawsuit, Dynamic filed a cross-claim against Apache alleging that by virtue of a Master Service Contract entered into between Dynamic and Apache on August 8, 1996, Apache owed primary indemnity and insurance, or, alternatively, co-indemnity and co-insurance, for injuries to Dynamic employees.[5] Apache responded with counterclaims of its own against Dynamic, contending that by virtue of the same contract, Dynamic owed Apache defense and indemnity for plaintiff's injuries.[6] The provision of the contract relied on by both Apache and Dynamic states as follows:

11. INDEMNITIES.
    a)     Contractor [Dynamic] agrees to be solely responsible for and assume

---

[2] Plaintiff's complaint alleges:

> This action arises under the General Maritime Law of the United States and/or pursuant to Rule 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA") since the accident occurred upon navigable waters, over the Outer Continental Shelf in the Gulf of Mexico off the coast of Louisiana on board the vessel M/V/ INTERNATIONAL TITAN, believed to be owned and operated by defendant, INTERNATIONAL MARINE, L.LC.

*See* plaintiff's Complaint, Doc. 1, ¶1.

[3] *See* Docs. 25 and 45.

[4] Doc. 36. IM also filed a third-party demand against Dynamic, which was dismissed by this Court on October 10, 2008. *See* Docs. 92 & 93.

[5] Doc. 55.

[6] Doc. 57.

> all liability for and hereby agrees to defend, release, indemnify, and hold harmless company group, [Apache and its subcontractor Alliance] from all losses, costs, expenses, and causes of action (including attorney's fees and court costs) for loss or for damage to property, and for injuries to persons and death arising out of, incident to, or in connection with, the work or any and all operations under this contract, whether or not such losses, costs, expenses, injuries, death, or causes or action are caused or contributed to by the negligence, omission, strict liability, or contractual liability, or fault or any member of company group and whether or not caused by a pre-existing condition. The liability assumed by contractor pursuant to this section 11(A) shall not be limited to the amount of current property or liability insurance voluntarily carried by contractor.

In its motion for summary judgment, Apache seeks a judgment of this Court that the foregoing contractual provision obligates Dynamic to provide defense and indemnity to Apache for plaintiff's injuries. Dynamic opposes the motion and in its cross-motion for summary judgment, does not argue *it* is entitled to defense and indemnity under the same contract, but rather, merely argues there are no genuine issues of material fact that Apache is *not* entitled to the relief it seeks.

The parties raise the issue of whether the LOIA is applicable in this matter. Dynamic alleges the LOIA applies, barring any claims by Apache for defense and indemnity. Apache alleges the LOIA is not applicable, as maritime law applies. Thus, to determine whether the defense and indemnity provision at issue is valid and enforceable, this Court must determine whether the August 8, 1996 Master Service Contract between Apache and Dynamic is a maritime or non-maritime contract. If the contract is a maritime contract, federal maritime law applies and the LOIA is not applicable to bar the validity of the defense and indemnity provision in the contract. However, if the contract is non-maritime in nature, OCSLA applies, and Louisiana law – as the law of the adjacent state – can operate to invalidate the defense and indemnity provision.

## II. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. Proc. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c).

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. Fed. R. Civ. Proc. 56(e).

As the Fifth Circuit has pointed out:

> This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.* ...[S]ummary judgment is appropriate in *any* case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations omitted)(emphasis in original).

In evaluating the evidence provided in support of, and in opposition to a Motion for Summary Judgment, "[t]he court must view facts and inferences in the light most favorable to the party opposing the motion." Hunt v. Rapides Healthcare Sys. LLC, 277 F.3d 757, 762 (5th Cir. 2001).

"A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the non-moving party." Id. In evaluating evidence to determine whether a factual dispute exists, "[c]redibility determinations are not part of the summary judgment analysis." Id. To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party *that the jury is not required to believe*, and should give credence to the evidence favoring the non-moving party, *as well as that evidence supporting the moving party that is uncontradicted and unimpeached.*" Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001) (emphases added).

### III. Law and Analysis

#### A. Apache's Motion for Summary Judgment [Doc. 94]

Apache moves this Court "for summary judgment regarding its counterclaim against Dynamic stating that Dynamic owes defense and indemnity to Apache and its subcontractor, Alliance . . . pursuant to the terms and conditions of the Apache/Dynamic contract in force at the time of the plaintiff's accident. . . ."[7]

The parties' dispute centers on whether the defense and indemnity provision of the August 8, 1996 contract is valid and enforceable as a matter of law. To decide that, this Court must first determine what body of law governs the contract. Apache argues the contract is governed by the general maritime law; Dynamic argues the contract is governed by Louisiana law, by virtue of OCSLA. It is undisputed that if Louisiana law is applicable, the LOIA will invalidate the defense and indemnity provision at issue.

OCSLA was enacted in 1953 to extend the jurisdiction and control of the United States

---

[7] *See* Apache's Motion for Summary Judgment, Doc. 94.

government to the seabed and subsoil of the outer Continental Shelf and to its natural resources, to wit:

> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: *Provided, however*, That mineral leases on the outer Continental Shelf shall be maintained or issued only under the provisions of this subchapter.

43 U.S.C. §1333(a)(1). OCSLA goes on to provide in pertinent part:

> To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, *the civil and criminal laws of each adjacent State*, now in effect or hereafter adopted, amended, or repealed *are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf*, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf . . .

43 U.S.C.A. §1333(a)(2)(A) (emphasis added). Therefore, "OCSLA adopts the law of the adjacent state (Louisiana) as surrogate federal law, to the extent that it is not inconsistent with other federal laws and regulations." Fruge v. Parker Drilling Co., 337 F.3d 558, 560 (5th Cir. 2003); *see also* 43 U.S.C. §1333(a)(2)(A).

The law of the adjacent state, Louisiana, has promulgated the LOIA, which provides in pertinent part:

> Any provision contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or drilling for minerals ... is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee, or an agent, employee, or an

independent contractor who is directly responsible to the indemnitee."

La. Rev. Stat. §9:2780(B) (West 2009).

Apache, however, seeks to frame the issue as one involving the "situs" *of the tort* – focusing on the fact the plaintiff's *injury* occurred on the vessel as plaintiff was being transported to the platform – arguing that therefore maritime law should apply, not only to the tort, but to the contract at issue as well. Thus, as maritime law applies to govern the contract, the LOIA is not applicable. Apache, in particular, argues the OCSLA "situs" requirement is not met, thus blending the tort or jurisdictional inquiry into the contractual inquiry. Apache contends because the *plaintiff's injury* occurred aboard the vessel on open waters, OCLSA "situs" is not satisfied *as to the contract between Apache and Dynamic*, thus OCSLA – and, thus, the LOIA – cannot apply *to the contract* at issue. Responding, Dynamic argues the OCSLA "situs" requirement is met *as to the contract at issue* as the work contemplated *by the contract* was performed on a covered "situs."[8] Thus, what law applies to the August 8, 1996 *contract* will determine the applicability of the argued indemnity provision *of that contract*.

This Court concludes Apache's focus is misplaced and finds that whether or not the OCSLA "situs" requirement is met as to the tort is not controlling as to the contract at issue, as the instant dispute involves a *contract claim*. Accordingly, the law applicable to the *plaintiff's* underlying *tort claim* is distinguishable from the law applicable to the *contractual dispute* between *Apache and Dynamic*. As pointed out by Dynamic, such was the case in *Wagner v. McDermott, Inc.*, 899 F.

---

[8] Apache's focus on the "situs" requirement is drawn largely from *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492 (5th Cir. 2002) and *Grand Isle Shipyard v. Seacor Marine*, 543 F.3d 256 (5th Cir. 2008). However, as the thrust of *Demette* was whether the OCSLA was applicable to a jack-up rig whose drill string was embedded in the sea bed, *Demette* is factually distinguishable from the facts of this case. Additionally, as Dynamic points out in its opposition brief, *Demette* involved a maritime contract. For the reasons that follow in this ruling, this Court concludes *Demette* does not control.

Supp. 1551 (W.D. La. 1994), *aff'd*, 79 F.3d 20 (5th Cir. 1996), a case decided by this Court and affirmed by the Fifth Circuit. In *Wagner*, this Court concluded that, although federal maritime law governed the *plaintiff's underlying tort claim*, as the plaintiff was injured aboard a vessel, the *contract* at issue – for welding services to be performed *on a platform* – was non-maritime in nature. This Court reasoned:

> *[T]he claim which is at issue before this Court* is one for *contractual indemnity*. The *contract was non-maritime* for welding services on a platform. Consequently, either land based law governs the contract or the OCSLA which adopts Louisiana law as surrogate law governs the contract; under either theory, the LOIA would come into play. McDermott is asking Capital and/or Landry to indemnify it *pursuant to the contract for welding services on the platform*-that is the claim before the Court. The fact plaintiff happened to be on a vessel does not change the focus, particularly as neither said vessel nor its use was specifically referenced in the contract. The claim is made pursuant to the contract and the contract is non-maritime; the contract does not specifically reference either the vessel or its use, therefore, the contract is not for vessel services or for work on a vessel.

899 F.Supp. at 1557 (emphasis in original) (footnote omitted).

Here, the *contractual relationship* between *Apache and Dynamic* is evidenced by the August 8, 1996 Master Service Contract and a particular order for electrical repair work on a platform. Specifically, Dynamic was hired to repair electrical work on the platform damaged as a result of Hurricane Rita. According to Benny Gonsoulin, supervisor for Dynamic employees, all electrical repair work was to be performed on the platform itself, with no work to be performed on the vessel.[9] This fact is not disputed by Apache. Considering the foregoing, this Court concludes the contract is non-maritime in nature, and rather, is for work to be done on a platform where OCSLA would apply and, thus, the law of the adjacent state – here, Louisiana -- would govern the contract. Thus, this Court does not find Apache's argument persuasive.

---

[9] *See* Deposition of Benny Gonsoulin, Exhibit 2 to Dynamic's opposition brief, Doc. 98, at p. 15-16.

This Court, also, is unpersuaded by Apache's argument that the August 8, 1996 contract is a mixed contract. Apache cites a 1984 district court case from this division – *Hale v. Co-Mar Offshore Corp.*, 588 F.Supp. 1212 (W.D. La. 1984) (J. Shaw) – in support of its position. In *Hale*, the court noted:

> A "mixed contract" results where the parties agree to perform both maritime and nonmaritime services in the same contract. The separable maritime elements of an otherwise nonmaritime contract are subject to maritime, rather than state, law. Thus, if the injury occurs in the performance of a maritime obligation, the subsidiary indemnity and choice of law provisions will be subjected to scrutiny under maritime law.

588 F.Supp. at 1215.

Notwithstanding the foregoing, there is no evidence in this case that the August 8, 1996 contract – along with the subsequent specific order for electrical repair work – was a "mixed contract." Rather, the contract was for electrical work, which is not a traditional maritime activity. Therefore, Apache's suggestion in its brief that "[a]n agreement to transport people and supplies in a vessel to and from an offshore drilling rig is a maritime contract" is immaterial, as Dynamic and Apache did not contract for the provision of marine transportation services for Dynamic's employees to and from the platform. As in *Wagner*, the contract does not reference a vessel or its use, and the contract is not for vessel services or for work on a vessel.[10]

Apache relies primarily on *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492 (5th Cir. 2002) and the Fifth Circuit's recent decision in *Grand Isle Shipyard v. Seacor Marine*, 543 F.3d 256 (5th Cir. 2008) in support of its argument. In *Grand Isle*, Grand Isle's employee was injured in a fall

---

[10] While this Court notes that, to the extent there might be a *separate contract* to effect the transportation of Dynamic's employees to and from the platform, such contract could, potentially, be considered a maritime contract. The contract at issue however, is a contract for the performance of electrical repair work onboard a platform that does not reference a vessel or vessel services; such a contract is non-maritime in nature.

onboard the vessel, which was owned and operated by Seacor. At the time of his accident, the vessel was transporting the employee from his work platform to the residential platform, which contained the employee's living quarters. 543 F.3d at 257. It was undisputed neither the employee nor the vessel were in physical contact with the platform when the accident occurred. *Id.*

The employee filed suit against Seacor, asserting a claim for vessel negligence under §905(b) of the LHWCA. Seacor tendered its defense and indemnity to Grand Isle and claimed the benefit of insurance provided by Grand Isle's insurer, Gray. Grand Isle and Gray then filed suit seeking a declaratory judgment that Grand Isle was not contractually obligated to defend and indemnify Seacor and that Seacor was not entitled to insurance coverage from Gray. Grand Isle and Gray filed motions for summary judgment on the following grounds: (1) by virtue of OCSLA, the LOIA applied as surrogate federal law in this case, thus invalidating the contractual indemnity provision; and (2) §905(b) of the LHWCA was applicable to the case and prohibited enforcement of the indemnity provision. Seacor filed its own cross motion for summary judgment, contending general maritime law governed the contractual dispute. *Id.* at 257-58. The trial court held Louisiana law applied and the LOIA barred Seacor from asserting its indemnity and insurance claims against Grand Isle and Gray. The district court accordingly granted Grand Isle and Gray's motions for summary judgment. Seacor appealed to the Fifth Circuit. *Id.* at 258.

The Fifth Circuit reversed on appeal, holding that because the plaintiff's injury occurred on the vessel, the OCSLA "situs" requirement was not satisfied.[11] Therefore, the court held OCSLA could not apply, and therefore, by extension, Louisiana law, and the LOIA, could not invalidate the indemnity provision at issue. *Id.* at 263.

---

[11] The Court did not clearly distinguish which "situs" requirement as to which claim, i.e., plaintiff's couched in tort or the defendant's, couched in contract.

However, as Dynamic points out in its brief, the *Grand Isle* court appears to have resolved the issue before it – a contractual and coverage dispute – *without regard to the fact that there was a contract at issue*. Rather, the court decided the contractual issue based on the "situs" *of the plaintiff's injury* alone, without analyzing the nature of the contract itself.

The result reached by the court in *Grand Isle* is inconsistent with the result reached by an earlier panel in *Wagner. See* 79 F.3d 20 (5th Cir. 1996). Therefore, this Court is faced with rulings which on their face appear to be conflicting, from two different panels of the Fifth Circuit. Notwithstanding the result reached in *Grand Isle*, this Court finds the result reached by the earlier panel of the Fifth Circuit in *Wagner* remains applicable. The Fifth Circuit is clear that "[i]n the event of conflicting panel opinions from [the circuit], the earlier one controls, as one panel of this court may not overrule another." *Texaco Inc. v. Louisiana Land and Exploration Co.*, 995 F.2d 43, 44 (5th Cir. 1993), *citing Smith v. Penrod Drilling Corp.*, 960 F.2d 456, 459 n. 2 (5th Cir. 1992); *See also Heitkamp v. Dyke (In re Dyke)*, 943 F.2d 1435, 1442-43 (5th Cir.1991) (accord) Accordingly, this Court adopts the analysis set forth in *Wagner* rather than the analysis set forth in *Grand Isle*.

Because this Court concludes the contract at issue is a non-maritime contract, and as this Court determines the contract was for performance of services on the outer Continental Shelf within the production of oil and gas, this Court concludes OCSLA applies to the contract. As OCSLA applies, this Court concludes the law of the adjacent state – Louisiana – governs the August 8, 1996 contract between Apache and Dynamic.[12] The Fifth Circuit has held the LOIA is not inconsistent

---

[12] Given the express language of OCSLA, there are those who disagree whether a Court must or must not engage in the classic contractual inquiries regarding where the contract was confected in order to determine which state's law applies. However, this Court need not make that determination, because the factors involved in that analysis would indicate that the applicable law to be applied to the August 8, 1996 contract is the law of the state of Louisiana.

with federal law. *See, e.g., Hodgen v. Forest Oil Co.*, 87 F.3d 1512, 1528 ("We find nothing in the LOIA inconsistent with federal law."). *See also Wagner*, 899 F. Supp. at 1559 (application of Louisiana law, and specifically the LOIA, is not inconsistent with federal law when the contract at issue is not vessel-related), *citing Knapp v. Chevron USA, Inc.*, 781 F.2d 1123, 1131 (5th Cir. 1986) ("as [the LOIA] relates to non-vessel related indemnity agreements, it is not inconsistent with 'Federal laws' and is enforceable.").

Considering the foregoing, this Court concludes, pursuant to La. Rev. Stat. § 9:2780(B), the LOIA bars the defense and indemnity provision of the August 8, 1996 Master Service Contract between Apache and Dynamic. Therefore, Apache is not entitled to defense and indemnity from Dynamic in connection with plaintiff's injury, and Apache's motion for summary judgment [Doc. 94] is DENIED.[13]

### A.  Dynamic's Motion for Summary Judgment [Doc. 99]

In its cross-motion for summary judgment, Dynamic seeks summary judgment from this Court "declaring that there is no genuine issue of material fact that at the time of the accident made subject of this litigation, Dynamic did not owe contractual defense and indemnity to Apache Corporation nor to Alliance Offshore, L.L.C." For the reasons stated herein, this Court concludes there is no genuine issue of material fact that at the time of the accident made subject of this litigation, Dynamic did not owe contractual defense and indemnity to either Apache or Alliance. Consequently, Dynamic's cross-motion for summary judgment is GRANTED, and Apache's

---

[13] In its brief, Apache states it "anticipates" Dynamic will argue – if this Court finds OCSLA does not apply – that Dynamic will assert a "905(b)" defense to Apache's contractual claim. This argument essentially focuses on whether the plaintiff is a "traditional" longshoreman. Because this Court concludes OCSLA does apply in this matter, this Court need not consider an argument that Dynamic need not advance given this Court's ruling this date.

counterclaim against Dynamic for defense and indemnity from Dynamic is DISMISSED WITH PREJUDICE.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___6___ day of February, 2009.

_____
REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE